UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEGOTIATUS CORP., *doing business as* ORDER.CO.,

                      Plaintiff,

-v.-

VIOLA INC.; VB BRANDS CALIFORNIA LLC; VIOLA PORTLAND LLC; and D SAVAGE LLC,

                      Defendants.

---

24 Civ. 243 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

    Plaintiff Negotiatus Corp., doing business as Order.co ("Plaintiff" or "Order.co"), brought the instant action against Viola Inc., VB Brands California LLC, Viola Portland LLC, and D Savage LLC (collectively, "Defendants" or "Viola") to recover payment for services that Plaintiff provided to Defendants pursuant to a contract between the parties. Plaintiff asserts a claim for breach of contract, as well as several quasi-contractual claims for account stated, *quantum meruit*, and unjust enrichment.

    Before the Court is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth in the remainder of this Opinion, the Court denies Defendants' motion to dismiss in full.

# BACKGROUND[1]

### A. Factual Background

Plaintiff Order.co is a corporation, incorporated in Delaware and with its principal place of business in New York, that operates a web-based platform through which it provides a range of business and administrative services, including procurement, accounts payable automation, purchasing, purchase orders, and vendor management. (Compl. ¶¶ 5, 14). Defendant Viola Inc. is a corporation incorporated in and with its principal place of business in Colorado; Defendant VB Brands California LLC is a limited liability company whose members have citizenship in California; Defendant Viola Portland LLC is a limited liability company whose members have citizenship in Oregon and California; and Defendant D Savage LLC is a limited liability company whose members have citizenship in Michigan. (*Id.* ¶¶ 6-9).

To purchase services from Plaintiff, a customer must first create a user account on Plaintiff's web platform and agree to Plaintiff's terms and

---

[1]   This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers the exhibits attached to the Complaint, namely the contract between the parties (the "Contract" (Dkt. #1-1)); the invoices issued by Plaintiff to Defendants between March 14, 2022, and November 11, 2022 (Dkt. #1-2); the invoices issued by Plaintiff to Defendants between December 16, 2022, and March 3, 2023 (Dkt. #1-3); correspondence between Plaintiff and Rebel Rock Accounting on behalf of Defendants (Dkt. #1-4); and Plaintiff's demand letter (Dkt. #1-5). *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #25); to Plaintiff's memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #26); and to Defendants' reply memorandum of law in further support of the motion to dismiss as "Def. Reply" (Dkt. #27).

conditions. (Compl. ¶ 15). On or about February 25, 2022, Defendants created a user account on Plaintiff's platform and agreed to Plaintiff's terms and conditions (the "Contract"). (*Id.* ¶¶ 16-17). Section One of the Contract states that Plaintiff, as service provider, would "provide purchasing solutions and services through proprietary procurement and order fulfillment software and technology and related services for the purchase of supplies and products" to the customer. (Contract § 1; Compl. ¶ 18). Defendants could request such services by completing a services order form or an online subscription form, each of which was called a "Statement of Work." (*See* Contract § 6.1; Compl. ¶ 19). The Contract further provides that "Statements of Work shall be deemed accepted only if signed by" the service provider and the customer. (Contract § 6.1).

In exchange for Plaintiff's services, Defendants would pay a service fee. (*See* Contract § 3.1; *see also* Compl. ¶ 20). Plaintiff would invoice Defendants for the services rendered, and Defendants would be required to render payment within thirty days of the invoice issue date, except for any amounts disputed in good faith. (*See* Compl. ¶ 21; *see also* Contract § 3.1). The Contract further states that "[i]n the event payments are not received by [Plaintiff] within ten (10) days of becoming due," Plaintiff may (i) charge interest on the unpaid amount, at the rate that is the lesser of 1.5% compounded on a monthly basis and "the highest rate permissible under applicable law, from the date such payment was due until the date paid," and (ii) suspend performance for all services until payment is made in full. (Contract § 3.5; Compl. ¶¶ 22-23).

After entering into the Contract in February 2022, Defendants began requesting services from Plaintiff using the former's Order.co web account. (Compl. ¶ 24). Plaintiff accepted the requests and provided the services to Defendants. (*Id.* ¶ 25). In March 2022, Plaintiff issued the first invoice to Defendants. (*Id.* ¶ 27). From March 14, 2022, until November 11, 2022, Plaintiff issued, and Defendants accepted and paid, 24 invoices totaling $418,070.49. (*Id.* ¶¶ 28-29; *see also* Dkt. #1-2).

After November 11, 2022, Defendants continued to request Plaintiff's services, and Plaintiff continued to accept and provide the services, incurring business and operational expenses in the process. (Compl. ¶¶ 30-32). Plaintiff continued to send invoices for the services, which Defendants continued to accept. (*Id.* ¶ 33). Despite accepting the invoices without objection, Defendants failed to pay the invoices due on the following dates: December 16, 2022; December 21, 2022; December 23, 2022; December 28, 2022; January 4, 2023; January 23, 2023; January 31, 2023; February 23, 2023; and March 3, 2023. (*Id.* ¶¶ 34-37; *see also* Dkt. #1-3).

In March 2023, Plaintiff requested that Defendants pay the outstanding balance owed, and offered to work with Defendants to create a payment plan. (Compl. ¶ 39; *see* Dkt. #1-4 at 5). Melissa Diaz, the founder and partner of Rebel Rock Accounting, responded on Defendants' behalf. (Compl. ¶ 40; Dkt. #1-4 at 4-5). She acknowledged that "there is a substantial balance due to Order[.co] and we want nothing but to make you guys whole for the outstanding balance." (Dkt. #1-4 at 5). She further explained that "[t]he

4

reason for delay is simply because we are actively meeting with our investors and partners to find the most expedient resolution for you." (*Id.*). When Plaintiff followed up, Ms. Diaz again represented that Defendants "anticipate[d] being able to resolve the outstanding balance" and that their "intention has always been, and remains, making Order.co whole." (*Id.* at 3). But, due to "an unexpected interruption," she could not "guarantee a specific timeline on which [Defendants'] investor support [would] be received" and therefore they would understand if "Order.co need[ed] to move forward with further collections efforts." (*Id.* at 4). Plaintiff asked for more clarity on the interruption and for a substantive update regarding efforts to get the necessary capital. (*Id.* at 2). Ms. Diaz responded that no further update could be provided. (*Id.*).

On September 27, 2023, Plaintiff, through counsel, demanded that Defendants pay the outstanding balance. (Compl. ¶ 47; Dkt. #1-5). At that time, the balance was $352,496.08. (Dkt. #1-5 at 2). Plaintiff did not receive a response. (Compl. ¶ 48). Defendants have not paid the outstanding amount, and interest continues to accrue. (*Id.* ¶ 49).

**B.    Procedural Background**

Plaintiff initiated this action with the filing of the Complaint on January 11, 2024. (Dkt. #1). The Complaint pursues a claim for breach of contract, and, in the alternative, claims for account stated, *quantum meruit*, and unjust enrichment. (Compl. ¶¶ 50-74). On March 15, 2024, Defendants filed a pre-motion letter, arguing that the Complaint should be dismissed in its entirety because Plaintiff failed to state a claim upon which relief can be

5

granted. (Dkt. #19). Plaintiff opposed Defendants' request to file a motion to dismiss. (Dkt. #20). On March 22, 2024, the Court ordered the parties to appear for a pre-motion conference regarding Defendants' anticipated motion to dismiss. (Dkt. #21). At the conference, the Court set a briefing schedule, which included a period for Plaintiff to file an amended complaint. (*See* April 5, 2024 Minute Entry). Plaintiff chose not to file an amended complaint.

In accordance with the Court's briefing schedule, on June 7, 2024, Defendants filed their motion to dismiss the Complaint. (Dkt. #24). On July 11, 2024, Plaintiff filed its opposition to the motion to dismiss. (Dkt. #26). On July 26, 2024, Defendants filed their reply memorandum of law in further support of the motion to dismiss. (Dkt. #27).

## DISCUSSION

### A.     Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes "facts stated on the face of the complaint" and "documents appended to the complaint or incorporated in the complaint by reference." *Id.* (internal citation omitted); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). In resolving the instant motion, the Court considers both the Complaint and the documents appended to the Complaint, including the Contract between the parties.

**B.    Analysis**

The Complaint alleges that Defendants breached the Contract by accepting and failing to pay for services provided by Plaintiff. (Compl. ¶¶ 16, 34-37, 50-57). Defendants counter that Plaintiff's breach of contract claim should be dismissed because Plaintiff has failed to sufficiently plead that a valid contract exists. (Def. Br. 2-4). Defendants also argue that the alternative claims — account stated, *quantum meruit*, and unjust enrichment — should be dismissed as inadequately pleaded *and* duplicative of Plaintiff's contract claim. As it happens, however, Defendants' motion papers comprise a series of rhetorical questions, rather than fully-formed arguments. (*Id.* at 4-5).[2] The

---

[2]    A word is in order about Defendants' submissions in support of their motion. While it is true that the Federal Rules of Civil Procedure recite that they are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, they nonetheless require a movant to "state with particularity the grounds for seeking the order," Fed. R. Civ. P. 7(b)(1)(B). Courts, including the Second Circuit, have made plain that "[c]ourts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. 'Judges are not like pigs, hunting for truffles buried in' the record." *Albrechtsen* v. *Bd. of*

7

Court addresses, and rejects, each of these arguments in turn in the remainder of this Opinion.

1.  **Plaintiff Has Sufficiently Pleaded Its Breach of Contract Claim**

Count One of the Complaint alleges that Defendants breached the Contract entered into between the parties on or about February 25, 2022, by failing to make the payments required by the Contract. (Compl. ¶¶ 16, 34-37, 50-57). "Under New York law, the elements of a breach of contract claim are: (i) existence of a contract, (ii) performance of the contract by one party, (iii) breach by the other party, and (iv) damages." *Johnson* v. *Clearview AI, Inc.*, No. 23 Civ. 2441 (KPF), 2024 WL 2274267, at *5 (S.D.N.Y. May 20, 2024) (quoting *Terwilliger* v. *Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)).[3] Where a plaintiff "has an arguable claim under [a] contract," that claim should

---

*Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (quoting *United States* v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *see also Kane* v. *De Blasio*, 19 F.4th 152, 167 n.15 (2d Cir. 2021) (declining to address single-sentence arguments raised by defendants in connection with application for preliminary injunction); *cf. Olin Corp.* v. *Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 875 (S.D.N.Y. 2018) ("Nor must this judge trudge the dry desert of the record of this case, searching for some rumored water hole."). Put simply, the laconism of Defendants' briefing was neither supportive of their arguments nor helpful to the Court. What is more, Defendants' counsel knows better, having appeared before the Court over a period of years in another matter. *See Arrowhead Cap. Fin., Ltd.* v. *Seven Arts Ent., Inc.*, No. 14 Civ. 6512 (KPF), 2016 WL 4991623, at *1 (S.D.N.Y. Sept. 16, 2016), *opinion withdrawn in part on reconsideration*, No. 14 Civ. 6512 (KPF), 2017 WL 1653568 (S.D.N.Y. May 2, 2017), *and aff'd*, 739 F. App'x 701 (2d Cir. 2018) (summary order).

3   In the instant diversity action, the Court applies New York law, because the Contract contains a choice-of-law provision that specifies that the Contract and all matters arising out of the Contract "are to be construed in accordance with the laws of the State of New York." (Contract § 14.7). *See Terwilliger* v. *Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (applying New York law where the contract specified that it was governed by New York law). Further, the parties do not dispute that New York law applies. *Cf. Arch Ins. Co.* v. *Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues ... presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." (internal quotation marks and citation omitted)).

not be dismissed on a Rule 12(b)(6) motion. *Id.* (quoting *Lamoureux* v. *Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022)).

As to the first element, "[e]xistence of a contract requires 'an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Prince of Peace Enters., Inc.* v. *Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (internal citations omitted), *adhered to on denial of reconsideration*, No. 07 Civ. 349 (RJH) (FM), 2011 WL 650799 (S.D.N.Y. Mar. 14, 2011). "[A] complaint fails to sufficiently plead the existence of a contract if it does not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms." *Ebomwonyi* v. *Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020) (internal quotation marks omitted) (alterations adopted), *aff'd*, No. 20-3344, 2022 WL 274507 (2d Cir. Jan. 31, 2022) (summary order). "Conclusory allegations that a contract existed ... do not suffice." *Id.*

Each of Defendants' arguments for dismissal of Plaintiff's breach of contract claim presupposes that no contract existed. (Def. Br. 2-4). To begin, Defendants argue that the Complaint is unclear as to when the parties assented to the Contract. (*See id.* at 3).[4] Under New York law, "[m]utual assent requires ... a meeting of the minds of the parties ... on all essential terms"; if a court finds that there is "substantial ambiguity" as to "whether both parties have mutually assented to all material terms," the court cannot

---

[4] Defendants present this argument simply by asking the question: "[w]hen did each party allegedly assent to the contract?" (Def. Br. 3). They provide no additional support or discussion as to this point.

9

find or enforce the contract.  *Prince of Peace Enters.*, 760 F. Supp. 2d at 397. In the instant case, Plaintiff claims that to purchase services from it, customers "*must* create a user account on Order.co's web platform *and* agree to Order.co's Terms and Conditions" (Compl. ¶ 15 (emphases added)), and that Defendants "entered into the Terms and Conditions with Order.co" on February 25, 2022 (*id.* ¶ 16).  As such, Plaintiffs have adequately pleaded that the contract at issue is a web-based contract.

The Second Circuit has "distinguished web-based contracts" based on "the manner in which the user manifests assent." *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).  "'[C]lickwrap' (or 'click-through') agreements … require users to click an 'I agree' box after being presented with a list of terms and conditions of use [and] 'browsewrap' agreements … generally post terms and conditions on a website via a hyperlink at the bottom of the screen."  *Id.* Though Plaintiff does not provide much detail regarding the functionality of its web platform sign-up process, Plaintiff seems to describe a clickwrap agreement by alleging that customers must agree to the Terms and Conditions to be able to order services from Plaintiff.  (Compl. ¶ 15).  Accordingly, drawing all reasonable inferences in Plaintiff's favor, the Court finds that Defendants assented to the Contract when they agreed to Plaintiff's Terms and Conditions. *See Int'l Council of Shopping Centers, Inc.* v. *Info Quarter, LLC*, No. 17 Civ. 5526 (AJN), 2018 WL 4284279, at *2, 6 (S.D.N.Y. Sept. 7, 2018) (finding that plaintiff had sufficiently alleged that contracts existed where plaintiff pleaded that

website registration process required applicants to agree to terms and conditions).

Further, a party's conduct can also manifest assent. *See Dodge St., LLC.* v. *Livecchi*, 32 F. App'x 607, 611 (2d Cir. 2002) (summary order) ("Under New York law, even if a party subjectively does not intend to be legally bound, if his actions, gauged by an objective standard, support the conclusion that he accepted the agreement, he will be legally bound to honor the contract."). Plaintiff alleges that, after entering into the Contract, and before they eventually stopped paying for requested services, Defendants accepted and paid 24 invoices. (Compl. ¶ 29). Such conduct clearly "manifest[s] the requisite assent necessary to constitute a binding ... agreement." *Dodge St., LLC.*, 32 F. App'x at 611; *see also Valelly* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.''" (quoting *Meyer*, 868 F.3d at 75)).[5]

Having determined that Plaintiff has adequately pleaded that Defendants assented to the Contract, the Court now turns to Defendants' other arguments challenging the existence of a contract. Defendants claim that Plaintiff has not

---

[5]  In their reply brief, Defendants argue that the Contract "explicitly requires original and/or facsimile signatures" (Def. Reply 4), and that Plaintiff has not included any signatures with its Complaint. Arguments first raised in a reply brief, however, are generally deemed waived and need not be considered. *See, e.g., Tardif* v. *City of New York*, 991 F.3d 394, 404 n.7 (2d Cir. 2021); *Rowley* v. *City of New York*, No. 00 Civ. 1793 (DAB), 2005 WL 2429514, at *5 (S.D.N.Y. Sept. 30, 2005).

sufficiently pleaded the parties to the Contract. (Def. Br. 3). In advancing that argument, Defendants again ask only a question: "[i]s Plaintiff alleging that there were five parties to this contract — the four Defendants and Plaintiff, or were there just two parties to the contract — one of the Defendants and Plaintiff, and if so, which specific Defendant?" (*Id.*). In response, Plaintiff explains that "the Complaint actually means what it says": the parties to the Contract are Plaintiff and the four named Defendants — Viola Inc., VB Brands California LLC, Viola Portland LLC, and D Savage LLC — and "the allegations made against Viola actually apply to each defendant included within the definition." (Pl. Opp. 5).

    The Court agrees with Plaintiff. The Complaint expressly alleges that "Viola," defined to include all four named Defendant entities, entered into the Contract with Plaintiff. (Compl. ¶¶ 1, 16-17). And, as it must when considering a motion to dismiss, the Court accepts that well-pleaded allegation. Similarly, Defendants argue that Plaintiff has failed to plead which specific Defendant breached the Contract. (Def. Br. 3-4). That argument fails for the same reason: Plaintiff clearly alleges that the four named Defendants breached the Contract. (Compl. ¶¶ 1, 16-17). Finally, Defendants argue that Plaintiff has failed to plead the existence of a contract because Plaintiff did not allege the date that the parties entered into the Contract. (Def. Br. 3). Again, the Complaint expressly alleges the date on which Defendants entered into the Contract — February 25, 2022 — and the Court accepts that well-pleaded

allegation. (*Id.* ¶¶ 16-17). Accordingly, the Court finds that Plaintiff has sufficiently alleged the existence of a contract.

Plaintiff also sufficiently alleges that it performed under the Contract and that Defendants breached the Contract. *See Johnson*, 2024 WL 2274267, at *5. Section 3.1 of the Contract provides:

> In exchange for Service Provider's performance of the Services, Customer shall pay to Service Provider the service fee ... set forth on the applicable Services Order Form, Statement of Work and/or the online subscription link provided by Service Provider to Customer. Except for any amounts disputed by Customer in good faith, Customer shall pay to Service Provider the cost of all Supplies ordered by Customer through Service Provider or facilitated by Service Provider on Customer's behalf ... provided, that Customer will make such payment within thirty (30) days of the invoice issue date if Customer has not completed and submitted the Billing Form to Service Provider.

(Contract § 3.1; *see also id.* § 3.5 (allowing interest on unpaid balances)). According to Plaintiff, Defendants never disputed or objected to any amounts provided in the invoices. (Compl. ¶ 55). Further, Plaintiff asserts that it fulfilled all its obligations under the Contract, including providing the services requested by Defendants and issuing invoices for those services. (*Id.* ¶¶ 25-26, 29, 52, 54). Despite this, Defendants failed to pay the amounts for which they were invoiced from December 2022 through March 2023. (*Id.* ¶¶ 35-36, 56-57). Therefore, Plaintiff claims that it is owed the value of the services that were not paid for, which, inclusive of interest as specified in Section 3.5 of the Contract, totaled $352,496.08 at the time the Complaint was filed. (*Id.* ¶ 4).

Taking Plaintiff's allegations as true, the Court finds that Plaintiff has adequately alleged its breach of contract claim.  *See Comfort Inn Oceanside* v. *Hertz Corp.*, No. 11 Civ. 1534 (JG) (JMA), 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011) ("Courts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*."); *see also Elsevier, Inc.* v. *Grossman*, No. 12 Civ. 5121 (KPF), 2013 WL 6331839, at *2, 12 (S.D.N.Y. Dec. 5, 2013) (finding that plaintiff had adequately pleaded its breach of contract claim where plaintiff alleged that it provided journals to defendants at rates charged to individuals, which defendants then resold to institutions despite the contract's preclusion of such resale).  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claim for breach of contract.

### 2. Plaintiff Has Sufficiently Pleaded Its Claim for Account Stated and Dismissal of That Claim Is Unwarranted at This Stage

In the alternative, Plaintiff alleges several quasi-contract claims; as to these, Defendants challenge both the adequacy of the pleading and their ability to coexist with Plaintiff's contract claim.  The first of the quasi-contract claims is for account stated, which is "an agreement between parties to an account based on prior transactions between them with respect to the correctness of the account items and balance due."  *Ray* v. *Balestriere Fariello,* No. 18 Civ. 11211 (KPF), 2021 WL 3810640, at *12 (S.D.N.Y. Aug. 26, 2021) (quoting *Yiwu Lizhisha Accessories Co., Ltd.* v. *Jjamz, Inc.*, 336 F. Supp. 3d 179, 183 (S.D.N.Y. 2018)), *aff'd*, No. 23-274-cv, 2024 WL 390293 (2d Cir. Feb. 2, 2024) (summary order).  Such an agreement may be express or implied.  *Id.* (citing *Manhattan*

*Motorcars, Inc.* v. *Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y. 2007); *IMG Fragrance Brands, LLC* v. *Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)). "Whether an account stated arises by implication will 'vary with circumstances that surround the submission of the statements and those circumstances include, of course, the relation between the parties.'" *Ray*, 2021 WL 3810640, at *12 (quoting *Yiwu Lizhisha Accessories*, 336 F. Supp. 3d at 183). Further, an account stated "may be implied by the defendant's partial payment on a disputed account or by the defendant's retention of a statement of account 'without objecting to it within a reasonable time.'" *Media Tenor Int'l AG* v. *Medco Health Sols., Inc.*, No. 13 Civ. 7223 (DLC), 2014 WL 2933215, at *7 (S.D.N.Y. June 27, 2014) (quoting *LeBoeuf, Lamb, Greene & MacRae, L.L.P.* v. *Worsham*, 185 F.3d 61, 64 (2d Cir. 1999)). Here, Plaintiff alleges that Defendants accepted all of the invoices provided by Plaintiff without objection, including those invoices on which Defendants have failed to make payment and that now give rise to Plaintiff's claims. (Compl. ¶ 61).

The Court recognizes that under New York law, "a claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract." *Media Tenor Int'l AG*, 2014 WL 2933215, at *8 (quoting *Martin H. Bauman Assocs., Inc.* v. *H & M Int'l Transport, Inc.*, 567 N.Y.S.2d 404, 409 (1st Dep't 1995)). And, to be sure, Plaintiff's claims for account stated and for breach of contract arise out of the same facts and seek the same damages. *See NetJets Aviation, Inc.* v. *LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they 'arise from the same

facts ... and do not allege distinct damages.'" (quoting *Sitar* v. *Sitar*, 854 N.Y.S.2d 536, 538 (2d Dep't 2008))); *see also Lavazza Premium Coffees Corp.* v. *Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 470-71 (S.D.N.Y. 2021).

Significantly, however, Defendants dispute the existence of a contract in this case. The Court has found that Plaintiff has sufficiently alleged the existence of a contract at the motion to dismiss stage. But it will not dismiss the alternative claim for account stated at this point in the litigation because it is possible that the Court could find, at a later stage, that no valid contract existed. *See Rynasko* v. *New York Univ.*, 63 F.4th 186 (2d Cir. 2023) (Parker, *J.*, concurring in part) ("Alternative pleading is, of course, available and in some instances appropriate.... Eventually, however, the court will determine if the contract is valid and covers the subject matter at issue, and at that point the plaintiff must elect a remedy."); *see also Kaiburr Sys. LLC* v. *Tower 05, Inc.*, No. 22 Civ. 399 (GLS) (TWD), 2023 WL 7183183, at *1-2 (N.D.N.Y. Nov. 1, 2023) (denying motion to dismiss account stated and *quantum meruit* claims where scope of agreement was unclear at motion to dismiss phase); *Mediterranean Shipping Co. (USA) Inc.* v. *Huatai USA LLC*, No. 19 Civ. 10756 (AKH), 2020 WL 4750260, at *2 (S.D.N.Y. Aug. 17, 2020) ("While Plaintiff may not ultimately recover the same damages twice, it may maintain both theories[, namely account stated and breach of contract,] at [the motion to dismiss] stage, where the Court has not yet ruled on the validity of any contract."). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim for account stated.

### 3. Plaintiff Has Sufficiently Pleaded Its Claim for *Quantum Meruit* and Dismissal of That Claim Is Unwarranted at This Stage

For similar reasons, the Court finds that dismissal of Plaintiff's claim for *quantum meruit* is unwarranted at this time. Under New York law, a plaintiff must establish the following to recover in *quantum meruit*: "[i] the performance of services in good faith, [ii] the acceptance of the services by the person to whom they are rendered, [iii] an expectation of compensation therefor, and [iv] the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc.* v. *Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). Plaintiff has alleged that it rendered in good faith the services for which Defendants were invoiced from December 2022 through March 2023. (Compl. ¶¶ 34-37). Plaintiff has also alleged that Defendants accepted and enjoyed the benefits of those services and did not at any time object to the invoices for those services. (*Id.* ¶¶ 34-37, 70-72). Further, Plaintiff has alleged that it expected reasonable compensation from Defendants in exchange for those services, and that the reasonable value of the services plus accruing interest is $352,496.08. (*Id.* ¶ 73-74).

"Though New York law does not permit a plaintiff to recover under both breach of contract and *quantum meruit*, a plaintiff may properly plead both claims because the plaintiff may 'not ultimately be able to establish an enforceable … contract.'" *Kaiburr Sys. LLC*, 2023 WL 7183183, at *1 (quoting *Rynasko*, 63 F.4th at 201-02). Here, where it remains possible that Defendants could demonstrate that no enforceable contract exists between the

parties, the Court once again finds that dismissal of the alternative quasi-contract claim is unwarranted.

###    4. Plaintiff Has Sufficiently Pleaded Its Claim for Unjust Enrichment and Dismissal of That Claim Is Unwarranted at This Stage

Finally, the Court finds that Plaintiff's claim for unjust enrichment may proceed past the motion to dismiss stage.  "To state a claim for unjust enrichment under New York law a [p]laintiff must show that [i] the defendant was enriched; [ii] at the expense of the plaintiff; and [iii] that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Valcarcel* v. *Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021).  As discussed, Plaintiff alleges that it provided services to Defendants in good faith and that Defendants accepted the services but did not pay for them.  (Compl. ¶¶ 34-37, 65).  Therefore, Plaintiff alleges, Defendants were enriched at the expense of Plaintiff and it would be unjust to allow Defendants to keep the amount that they were required to pay to Plaintiff for the services they received. (*Id.* ¶¶ 64-69).  And while this claim is pleaded in the alternative, like Plaintiff's claims for account stated and *quantum merit*, the Court finds it is premature to dismiss this claim now, before determining the parameters of the parties' contractual relationship.  *See Nat'l Convention Servs., L.L.C.* v. *Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017) (finding that the unjust enrichment claims should not be dismissed at the motion to dismiss stage, where the scope of the contractual obligations had yet to be determined).  Accordingly, the Court finds that

Plaintiff has sufficiently pleaded a claim for unjust enrichment and denies Defendants' motion to dismiss that claim at this stage.

## CONCLUSION

Defendants' motion to dismiss is DENIED in full.  The Clerk of Court is directed to terminate the pending motion at docket entry 24.  The parties are hereby ORDERED to meet and confer and submit a revised case management plan on or before **March 6, 2025**.

SO ORDERED.

Dated:     February 6, 2025
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge